1

2

3

4

5              UNITED STATES DISTRICT COURT

6            NORTHERN DISTRICT OF CALIFORNIA

7

8    JOHN PATRICK HENNEBERRY,                Case No.  13-cv-05238-MEJ

              Plaintiff,
9                                            **ORDER RE: MOTIONS TO DISMISS**

10          v.                               Re: Dkt. Nos. 8, 12

11   CITY OF NEWARK, et al.,

              Defendants.
12

13                          **INTRODUCTION**

14          Plaintiff John Patrick Henneberry ("Plaintiff") filed this civil rights action on November

15   12, 2013, seeking damages and declaratory and injunctive relief arising from his arrest and

16   subsequent incarceration.  Compl., Dkt. No. 1.  Pending before the Court is Defendants' City of

17   Newark, John Becker, David Benoun, Karl Fredstrom, and Renny Lawson's ("City Defendants")

18   Motion to Dismiss portions of Plaintiff's Complaint.  Dkt. No. 8.  Also pending is Defendants'

19   Newark Chamber of Commerce and Linda Ashley's ("COC Defendants") Motion to Dismiss

20   portions of Plaintiff's Complaint.  Dkt. No. 12.

21          Having considered the parties' papers, relevant legal authority, and the record in this case,

22   the Court GRANTS IN PART and DENIES IN PART Defendants' Motions for the reasons set

23   forth below.

24                          **BACKGROUND**

25   **A.     Factual Background**

26          The following factual background is taken from Plaintiff's Complaint.  On April 18, 2013,

27   the Newark Chamber of Commerce ("Chamber") and the City of Newark ("City") held an event

28   called the "2013 State of the City and Showcase" ("Showcase") featuring Newark Mayor Al Nagy

United States District Court
Northern District of California

United States District Court
Northern District of California

1    as the keynote speaker.  Compl. ¶ 2.  All of the members of the Newark City Council were invited

2    and attended the event, along with City administrators and members of the Newark Planning

3    Commission.  *Id*.  Also present were City Attorney David Benoun and City Manager John Becker.

4    *Id*.

5         Plaintiff alleges that the event was publicized via flyers, newspaper listings, and the

6    Chamber and City websites.  *Id*.  These flyers showed both the Chamber's and the City's emblem.

7    *Id*.  The webpage stated that a luncheon would be served, but there would be free gallery seating

8    for the public beginning at 12:20 p.m.  *Id*. ¶ 30.  Plaintiff believed that based on: (1) the publicly

9    distributed flyers that stated there would be free gallery seating; (2) the fact that a majority of the

10   City Council and the mayor were present; and (3) Plaintiff's understanding of California

11   Government Code section 54952.2(c) ("the Brown Act"), [1] he believed that this event was open to

12   the public.  *Id*. ¶¶ 3, 31.

13        Plaintiff alleges that he arrived at the event at 12:15 as the luncheon was concluding, but

14   did not enter.  *Id*. ¶¶ 3, 30.  Plaintiff entered the main room at 12:25 p.m. and sat quietly in an

15   empty seat in what he surmised was the gallery area.  *Id*. ¶ 30.  Plaintiff saw approximately 150

16   people seated at round tables, with the remains of lunch dishes on the table.  *Id*.  He saw

17   approximately 20 to 25 seats organized in rows without tables off to the side by the main entrance,

18   with a few people already sitting down.  *Id*.  Plaintiff took an empty seat in this area, which he

19   surmised to be the gallery, and sat quietly.  *Id*.

20        Plaintiff states he is well known to the elected officials and administrators of the City for

21   his frequent attendance and speech at City Council meetings.  *Id*. ¶ 3.  Thus, when City Manager,

22   David Becker noticed him sitting in the gallery, Plaintiff alleges Becker prompted Chamber of

23   Commerce President Linda Ashley to ask him to leave.  *Id.* ¶ 32.  Plaintiff believes that Becker

24   wished to remove him because of personal animosity stemming from Plaintiff's prior exercise of

25   _____

26   [1] The Brown Act provides that a "majority of the members of a legislative body shall not, outside
     a meeting authorized by this chapter, use a series of communications of any kind, directly or
27   through intermediaries, to discuss, deliberate, or take action on any item of business that is within
     the subject matter jurisdiction of the legislative body."  Cal. Gov't Code § 54952.2(b)(1).  There
28   are a number of exceptions to this requirement.  *Id.* §§ 54952.2(c)(1)-(6).

his free speech rights at City meetings. *Id.* Plaintiff alleges that City Attorney Benoun and Newark Police Commander Lawson also told Plaintiff he had no right to be present as this was not a public event, and they demanded that Plaintiff leave. *Id.*

Plaintiff alleges that after Ashley signed a citizen's complaint, Commander Lawson and Officer Fredstrom forcibly pulled him from his chair, band tied his arms with wristlocks, and physically removed him from the room. *Id.* ¶¶ 4, 33. Plaintiff alleges that the officers acted "upon the request and consent" of Benoun, Becker, and Ashley. *Id.*

Once outside the room, Plaintiff was handcuffed and seated in a chair approximately ten feet from the entrance of the meeting. *Id.* ¶ 34. Then, he was placed in a patrol car for approximately thirty minutes, before being transported to the Newark Police Station. *Id.* At the Newark police station, Officer Fredstrom interrogated Plaintiff. *Id.* Plaintiff alleges that during the interrogation, he asserted his right as a member of the public to be at a public meeting in which a quorum of the members of the Newark City Council were present. *Id.*

After the interrogation, Plaintiff was transported to the Fremont police station, where he remained in the back of a police car, still in too tight wrist locks. *Id.* ¶ 35. Plaintiff was then driven to Santa Rita jail. *Id.* Plaintiff alleges he complained that the wrist locks were too tight, but officers denied his requests to have them loosened while he was in the car. *Id.*

Ultimately, Plaintiff was charged with violating California Penal Code section 602.1(a), a misdemeanor, for interfering with the event[2]. *Id.* ¶ 37. Although Plaintiff alleges that he should have been cited and released pursuant to Penal Code section 853.6, Officer Fredstrom instead drove Plaintiff to the Santa Rita Jail. *Id.* Plaintiff alleges that the Alameda County Sheriff's Office ("ACSO"), also a defendant in this case, incarcerated Plaintiff for over thirty hours before ultimately releasing him as required by California law. *Id.* At the jail, Plaintiff alleges that

United States District Court
Northern District of California

---

[2] Penal Code section 602.1(a) provides: "Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine."

Sheriff's deputies maliciously informed him that he was required to post $5,000 bail or he would not be released until his court date. *Id*. ¶ 37. Plaintiff refused to post bail. *Id*.

At Santa Rita, Plaintiff alleges he was held with mentally unstable individuals in sordid, crowded cells, and other areas. *Id*. ¶ 36. The cells were cold, and Plaintiff had no way to care for his personal hygiene. *Id*. In addition, Plaintiff alleges that there were no private toilet facilities, and he was forced to use a toilet in full view of female jail staff. *Id*. Plaintiff was charged with trespass, a minor misdemeanor, based on Ashley's citizen complaint. *Id*. Plaintiff alleges he was held incommunicado, and not given timely access to a phone. *Id*.

Although Plaintiff informed deputies that he was entitled to be cited and released, Plaintiff alleges he was placed in a holding tank to be processed for a housing unit at the jail. *Id*. Plaintiff was ultimately released on a citation, and the District Attorney declined to file charges. *Id*. However, Plaintiff alleges he now has an arrest record, and will incur legal fees to vindicate his rights and expunge the record. *Id*. ¶ 39.

Plaintiff alleges that the arrest and incarceration by the City and ASCO was intended to chill his exercise of free speech, and that this conduct violated his First Amendment rights. *Id*. ¶ 38. Plaintiff alleges that the entire incident was to prevent and deter him from engaging in public discourse and to intimidate him from voicing public opinions critical of the City of Newark. *Id*.

**B.      Procedural Background**

On November 21, 2013, Plaintiff filed a Complaint alleging eight causes of action against the Chamber, the Chamber's president, Linda Ashley, the City of Newark, Newark City Attorney David Benoun, the Newark Police Department ("NPD"), NPD officers Renny Lawson and Karl Fredstrom, and the ACSO. Compl. at 11-13. Ashley, Becker and Benoun are sued in their individual and official capacities. *Id*. at 14-15.

The first cause of action alleges violation of Plaintiff's First Amendment rights. The second cause of action alleges violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure, excessive force, and imprisonment without probable cause. The third cause of action alleges violation of Plaintiff's Fourteenth Amendment due process rights. The fourth cause of action alleges violation of Plaintiff's Fourteenth Amendment equal protection rights. The

United States District Court
Northern District of California

4

fifth through eighth causes of action assert state law claims for: False Arrest and Imprisonment; Violation of California Civil Code section 51.7 (the "Unruh Act"); Violation of California Civil Code section 52.1 (the "Bane Act"); and Negligence.

The Complaint also includes a section entitled "Requisites for Relief," which are not incorporated into the above causes of action. *Id*. ¶¶ 61-65. This section attempts to assert a claim under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978) against the Chamber, as well as the City and state agencies based on their policies, customs or practices.[3] *Id*. The Complaint further seeks to certify a class of persons "who instead of being cited and released, were instead detained, arrested, and imprisoned for unreasonable and lengthy periods of time." *Id*. ¶ 25.

Defendants Ashley and the Chamber filed a Motion to Dismiss (the "COC Mot.") on December 20, 2013, in which they seek to either: (1) strike the Complaint for failure to provide fair notice in compliance with the accepted pleading standards set forth in Federal Rule of Civil Procedure 8(a); or (2) dismiss the Complaint for failure to state a claim against them. Dkt. No. 12. Plaintiff filed an Opposition ("COC Opp'n") on January 10, 2014. Dkt. No. 16. The COC filed a Reply ("COC Reply") on January 16, 2014. Dkt. No. 16.

The City Defendants also filed a Motion to Dismiss raising the following challenges: (1) the claims against defendants Becker and Benoun are barred as those defendants are immune under Government Code section 821.6; (2) the Complaint fails to state a claim against the City of Newark; (3) the Complaint fails to state a claim for violation of civil rights under the Fourteenth Amendment; (4) the Complaint fails to state a claim for violation of Civil Code section 51.7; and (5) the Complaint fails to state a claim for violation of Civil Code section 52.1. Dkt. No. 28 ("New. Mot."). Plaintiff filed an Opposition to the Motion ("New. Opp'n") on January 10, 2014.[4] Dkt. No. 15. The City filed a Reply ("New. Reply") on January 17, 2014. Dkt. No. 18. On February 11, 2014, the Court found these motions suitable for disposition without oral argument. Dkt. No. 24.

---

[3] Pursuant to *Monell*, a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. at 694.

[4] Plaintiff dismissed the third cause of action based on violation of equal protection because he is not a member of a protected class. New. Opp'n at 2; COC Opp'n at 2.

United States District Court
Northern District of California

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 663–64.

1     If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

2 request to amend the pleading was made, unless it determines that the pleading could not possibly

3 be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

4 banc) (internal quotation marks and citations omitted).

5                                          **DISCUSSION**

6 **A.       Requests for Judicial Notice**

7     Plaintiff requests that the Court take judicial notice of the following documents: (1) a one

8 page "Flyer" prepared by the Newark Chamber of Commerce, which publicized the event,

9 attached as "Exhibit A"; and (2) the webpage of defendant Chamber publicizing the State of the

10 City address as a "Community Event", attached as "Exhibit B." Dkt. No. 15-1.  The Court

11 GRANTS Plaintiff's request for judicial notice of these documents as the content of the

12 advertisements is "not subject to reasonable dispute in that it is ... capable of accurate and ready

13 determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

14 Evid. 201(b).

15     Defendants request that the Court take judicial notice of the police report documenting

16 Plaintiff's April 18, 2013 arrest.  Req. for Jud. Not., Dkt. 12.  Plaintiff joins in the request.  The

17 Court DENIES the request to take judicial notice of this exhibit because the contents of police

18 reports or other police records are not proper subjects of judicial notice.  *See Pina v. Henderson*,

19 752 F.2d 47, 50 (2d Cir. 1985) (holding that the existence and content of a police report are not

20 properly the subject of judicial notice); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).

21 **B.       Whether the Complaint Fails to Comply with Federal Rule of Civil Procedure 8(a)**

22     The COC Defendants first argue that the Complaint should be stricken for failure to

23 comply with Rule 8.  COC Mot. at 4.  Particularly, the COC Defendants argue that the causes of

24 action are alleged against all defendants as a group, and therefore fail to give fair notice as to what

25 conduct creates liability for the Chamber or Ashley.  *Id.* at 4-5.  The COC Defendants contend that

26 this is especially important where, as here, the factual allegations do not give rise to an inference

27 as to the theories upon which Plaintiff claims Ashley's or the Chamber's liability rests.  *Id.*

28     Plaintiff counters that he has sufficiently pleaded his theory of liability as to Ashley and

United States District Court
Northern District of California

1    the Chamber based on the allegation that Ashley was a state actor and chief policy-maker for the

2    Chamber.  COC Opp'n at 3.

3         Rule 8(a)(2) requires that each claim in a pleading be supported by "a short and plain

4    statement of the claim showing that the pleader is entitled to relief."  Under this rule, a claim must

5    contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

6    action." *Twombly*, 550 U.S. at 555.  Instead, to satisfy Rule 8(a)(2), a "complaint must contain

7    sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

8    *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Although this standard requires that a

9    claim be "plausible on its face," it does not require that a complaint contain "detailed factual

10   allegations." *Id*. at 678, (internal quotation marks omitted).

11        Here, the Complaint fails to satisfy Rule 8(a)(2)'s pleading standard with regard to the

12   claims against Ashley and the Chamber.  Based on Plaintiff's argument in his Opposition, it

13   appears that he is alleging every cause of action against Ashley and the Chamber, based on the

14   theory that Ashley "triggered" the chain of events that led to the constitutional violations.  COC

15   Opp'n at 4.

16        Plaintiff's Complaint does not comply with Rule 8.  Instead of providing a simple, short

17   statement of the facts he alleges occurred, the Complaint contains lengthy, duplicative allegations

18   that make his claims difficult to parse.  For example, in Paragraph 4, Plaintiff alleges that he was

19   arrested based on a citizen's arrest sworn by Ashley.  In Paragraph 14, Plaintiff alleges that City

20   Attorney Benoun "consulted with Ashley" on the removal of Plaintiff and consented to Plaintiff's

21   arrest.  In Paragraph 32, Plaintiff alleges that City Manager Becker asked Ashley to have Plaintiff

22   removed.  In Paragraph 33, Plaintiff alleges that Ashley, Benoun, and Becker each requested and

23   consented to his arrest.

24        Plaintiff also alleges all causes of action against every defendant, although the facts do not

25   give rise to an inference that all defendants are responsible for all allegations.  For example, it is

26   not clear what conduct by Ashley Plaintiff contends violated his First Amendment rights, since

27   Plaintiff alleges that the City Manager asked Ashley, as the organizer and co-host of the event, to

28   have Plaintiff removed from the event.  Nor is it clear how Ashley is liable for violating Plaintiff's

United States District Court
Northern District of California

8

Fourth Amendment rights to be free of excessive force, or arrest without probable cause.  Plaintiff does not allege any facts showing that Ashley had any further involvement with any violation of Plaintiff's rights, such as the force used to detain him, or the length of his detention, or subsequent incarceration, or the fact that he was denied bail.  *See Ennis v. City of Daly City*, 756 F. Supp. 2d 1170, 1175-76 (N.D. Cal. 2010) (citing *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (fact that defendant signed citizen's arrest form and made false statements therein, which lead to the arrest insufficient to show a conspiracy to violate the plaintiff's civil rights against unlawful seizure or excessive force).

To the extent that Plaintiff's theory is that Ashley is liable as a state actor, he has not alleged anything that would support a plausible inference that a policy or custom of the Chamber of Commerce led to Plaintiff's arrest.  Further complicating matters is the fact that Plaintiff alleged all of the custom and policy allegations supporting his 42 U.S.C § 1983 claims at the end of the Complaint, but did not incorporate these additional factual allegations into the preceding legal allegations.

To the extent that Plaintiff's theory is that Ashley is liable for the state tort claims based on the fact that she complained to the police, and prompted his arrest, Plaintiff has also not alleged any facts to overcome the litigation privilege contained in California Civil Code section 47(b) that protects those communications, further making it difficult, if not impossible for Ashley to determine whether there is a plausible theory of liability asserted against her or her employer.

Last, Plaintiff now contends that the only cause of action which he specifically asserted against the City of Newark and the Alameda County Sheriff's Office is actually asserted against Ashley and the Chamber, even though it alleges negligent training, hiring, and supervision of police officers.  COC Opp'n at 15.  In this regard, Plaintiff argues that he "has pled sufficient facts to allege that defendants violated California Penal Code §§ 118 or 148.5….[which] suffice to articulate a legal duty which defendants owed plaintiff and violated."  *Id.*  Yet, there is nothing in the Complaint that references these statutes, or remotely explains how fair notice of these claims would be apparent from a negligent training claim asserted only against the government defendants.

9

1    As Plaintiff's Complaint does not provide a clean and concise statement of allegations

2    against each of the defendants, the Court finds that it fails to comply with Rule 8's straightforward

3    pleading requirements.  Accordingly, dismissal WITH LEAVE TO AMEND is appropriate on this

4    basis.

5    **C.       Whether the State Law Claims Against Becker and Benoun Must Be Dismissed**

6    Plaintiff's fifth through eighth causes of action assert state law claims for: False Arrest and

7    Imprisonment (Fifth Claim for Relief); Violation of California Civil Code section 51.7 (Sixth

8    Claim for Relief); Violation of California Civil Code section 52.1 (Seventh Claim for Relief); and

9    Negligence (Eighth Claim for Relief).  The City Defendants argue that these claims must be

10   dismissed as to City Manager Becker and City Attorney Benoun because they are immune from

11   suit under Government Code section 821.6.  New. Mot. at 7; New. Reply at 7.

12   California Government Code section 821.6 provides that "[a] public employee is not liable

13   for injury caused by his ... prosecuting any judicial ... proceeding within the scope of his

14   employment, even if he acts maliciously and without probable cause."

15   As to the Fifth Claim for false imprisonment, the City Defendants correctly acknowledge

16   that Government Code section 821.6 does not provide immunity.  New. Reply at 7.

17   The Seventh Claim appears to allege that Becker and Benoun violated the Bane Act

18   through their involvement in his arrest and incarceration.  Compl. ¶ 32.  The Bane Act provides a

19   private right of action against a person or persons who interfere by "threats, intimidation, or

20   coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or

21   enjoyment by any individual or individuals of rights secured by the Constitution or laws of the

22   United States, or of the rights secured by the Constitution or laws of this state…"  Cal. Civil Code

23   § 52.1.  The Ninth Circuit has held that immunity under section 821.6 does not extend to Bane Act

24   claims that are based on the same facts as, or are derivative of, false imprisonment claims.

25   *Cousins v. Lockyer*, 568 F.3d 1063, 1071-72 (9th Cir. 2009) (finding state attorney general and

26   prison officials were not protected by qualified immunity, under section 821.6 from claims for

27   false imprisonment, and Bane Act violation based on same facts as the false imprisonment claim).

28   Accordingly, to the extent that Plaintiff can establish that the Bane Act claims are derivative of the

United States District Court
Northern District of California

10

false imprisonment claims, Defendants Becker and Benoun are also not immune.  As discussed below, Plaintiff has not sufficiently alleged a cause of action for false imprisonment or violation of the Bane Act against these two defendants.

The Court need not analyze whether Becker and Benoun have immunity as to the Sixth Claim for violation of the Unruh Act[5], as Plaintiff has conceded this claim should be dismissed as to all Defendants.  The Court also need not analyze the issue of immunity as to the Eighth Claim for negligent training, hiring, and supervision, as this cause of action is asserted only against the City and the Alameda County Sheriff.

Based on this analysis, the City Defendants' Motion is DENIED as to the Fifth and Seventh Claims.  The Sixth and Eighth causes of action against Becker and Benoun are DISMISSED WITHOUT LEAVE TO AMEND.

**D.    Whether the City of Newark is Entitled to Governmental Immunity**

The City Defendants also argue that Plaintiff's negligence and false imprisonment claims against the City should be dismissed because Plaintiff failed to identify a statutory basis for public entity liability as required by California Government Code section 815(a).  New. Mot. at 10. Plaintiff counters that section 815(a) does not provide immunity to government agencies for false arrest or false imprisonment claims.  New. Opp'n at 5.  The Court agrees with Plaintiff that the City is not immune from liability for false imprisonment.

Defendants correctly note that California Government Code section 815(a) provides that "except as otherwise provided by statute … [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  However, section 815.2 provides that "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of

_____

[5] Civil Code § 51.7, the Unruh Act, provides that: "All persons… have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics."   Here, Plaintiff alleged violation of the Unruh Act based on his "actual or perceived political affiliation and/or viewpoint."  Compl. ¶ 55.

United States District Court
Northern District of California

action against that employee...." Cal. Gov't Code § 815.2. This is because "California ... has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees." *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002). Thus, the City is only immune if its employees are also immune. *Id.*; *see also* Cal. Gov't Code § 815.2(b). Here, the City is not immune because California Government Code section 820.4 specifically removes immunity from public employees for false arrest and imprisonment. Additionally, courts have held that counties can be vicariously liable for false imprisonment. *See, e.g., Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1049 (2007) (public employee, and his or her public entity employer, can be liable for false imprisonment)[6]; *Rodriguez v. Cnty. of Los Angeles*, 217 Cal. App. 4th 806, 807, 812 (2013); *Sullivan v. Cnty. of Los Angeles*, 12 Cal. 3d 710, 722 (1974); *Robinson*, 278 F.3d at 1016 (California law only grants municipal immunity where the individual employee would also be immune). Accordingly, the City Defendants' Motion to Dismiss the false imprisonment claim against the City is DENIED.

For similar reasons, the City may also be vicariously liable under the Bane Act for its employees' actions. Although the parties did not offer any case authority in support of their positions with respect to this claim, the Court notes that all of the district courts to confront this issue have expressly held that a governmental entity can be sued under the Bane Act. *See Russell v. City and Cnty of San Francisco*, 2013 WL 2447865, at *18 (N.D. Cal. June 5, 2013) (citing *Darraj v. Cnty of San Diego*, 2013 WL 1796990, at *15 (S.D. Cal., Apr. 29, 2013)); *Rodriguez v. City of Modesto*, 2013 WL 6415620, at *13 (E.D. Cal. Dec. 9, 2013); *Helstern v. City of San Diego*, 2013 WL 3515963, at *6 (S.D. Cal. July 11, 2013). Accordingly, the City Defendants' Motion to Dismiss the Bane Act claim against the City is DENIED.

A different result obtains with respect to the negligence claim asserted against the City. Although section 815.2(a) permits vicarious liability for the negligent acts of its employees,

---

[6] The City Defendants incorrectly argue that *Gillan* is inapposite. New. Reply at 9. However, *Gillan* expressly held that "a public employee, and his or her public entity employer...can be liable for false imprisonment [under section 815(a)]," although there are limits on the recoverable damages. 147 Cal.App.4th at 1049. The court noted that the employer's liability was by operation of section 821.6, which provides no immunity to government employees from liability for false arrest or false imprisonment. *Id.* at 1048.

12

1    section 815(a) prohibits direct liability in tort except as specifically provided by statute.  *Caldwell*

2    *v. Montoya*, 10 Cal. 4th 972, 980 (1995).  Here, Plaintiff has alleged negligent hiring, training, and

3    supervision, which is a form of direct liability, since it does not arise from the public entities'

4    vicarious liability for its employees' torts.  *Garcia v. City of Sanger*, 2009 WL 1362693, at *16

5    (E.D. Cal. May 14, 2009) (citing *de Villers v. Cnty of San Diego*, 156 Cal. App. 4th 238, 251-55

6    (2007)); *see also Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113 (2004) (negligent

7    hiring and supervision of police claim treated as direct liability claim).  Plaintiff has not identified

8    any statutory basis for direct negligence liability on this basis.  Accordingly, Plaintiff's negligence

9    claim against the City is DISMISSED WITHOUT LEAVE TO AMEND.

10   **E.      Whether the City of Newark is Liable Under *Monell***

11           In the first through fourth causes of action, Plaintiff asserts claims for violation of his

12   constitutional rights under the First, Fourth, and Fourteenth Amendments against all defendants

13   pursuant to *Monell*, 436 U.S. at 694.  Compl. ¶¶ 43-50.

14           The City Defendants argue that *Monell* liability should not attach to the City because

15   Plaintiff failed to set forth any allegations as to any policy, custom, or practice of the City of

16   Newark that resulted in the deprivation of any of Plaintiff's rights.  New. Mot. at 8.  The City

17   Defendants also argue that the Complaint fails to establish that the alleged unconstitutional action

18   was anything other than an isolated incident, which occurred in the absence of any

19   unconstitutional municipal policy.  *Id*. at 9.

20           In response Plaintiff argues that *Monell* liability attaches to the City because of the actions

21   of City Manager Becker in his alleged capacity as a "final decision maker."  New. Opp'n at 11.  It

22   is Plaintiff's position that Becker made the decision to remove Plaintiff from the event for the

23   wrongful purpose of interfering with his First Amendment rights.  *Id.* at 7-8 (citing *Pembaur v.*

24   *City of Cincinnati,* 475 U.S. 469, 481 (1986)).

25           A local government entity "may not be sued under § 1983 for an injury inflicted solely by

26   its employees or agents."  *Monell*, 436 U.S. at 694.  When an individual sues a municipality for

27   violation of a constitutional right, the municipality is liable only if the individual can establish that

28   the municipality "'had a deliberate policy, custom, or practice that was the 'moving force' behind

United States District Court
Northern District of California

the constitutional violation he [or she] suffered." *Id*. at 694-95; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *Galen v. Cnty of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007).  In order to hold a public entity liable, a plaintiff must demonstrate that the unlawful governmental action was part of the public entity's policy or custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury.  *Monell*, 436 U.S. at 690-92, 694-95.

A single act of a policymaker in some instances can be sufficient for a *Monell* claim when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  *Pembaur*, 475 U.S. at 481-82.  However, municipal liability will attach "only where 'a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"  *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (citing *Pembaur*, 475 U.S. at 483-84).

Here, Plaintiff alleges that the violations of his constitutional rights were "caused by customs, policies, directives, practices, acts and omissions of authorized policy makers of … the City of Newark … Newark Chamber of Commerce, including defendants [Ashley], [Becker], [Fredstrom], [Benoun], and [Lawson] … and other supervisory officials and employees of the City of Newark … who encouraged, authorized, directed, condoned, and ratified the unconstitutional and unlawful conduct complained of herein."  Compl. ¶ 61.  Plaintiff alleges that these customs, policies and practices include: "arrests without probable cause to disrupt and deter demonstrators and First Amendment protected activity; the failure to maintain adequate policies, and to adequately train, supervise and control NPD officers concerning the policing of activities in which members of the public engage in protected First Amendment activity and other expressive activities, and the constitutional and statutory limitations on arrests and imprisonment."  *Id.*  Plaintiff further alleges that these acts resulted in a denial of his constitutional rights, and were "done with conscious disregard and deliberate indifference for Plaintiff's rights."  *Id.* ¶¶ 62-63.

Plaintiff's sole allegation regarding Becker's involvement in his detention and arrest is that Becker "prompted defendant Ashley, president and C.E.O of the Newark Chamber of Commerce, to inform [Plaintiff] that he was not permitted to be present, and demand that he leave."  *Id.* ¶ 32.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff alleges that he believed "Becker wished for [him] to be removed because of animosity

2   towards [him], based upon [his] exercise of his right to free speech and to attend City of Newark

3   meetings." *Id*.  Although Plaintiff alleges he was forcibly removed from the ballroom based on

4   the "request and consent" of Ashley, Becker, and Benoun, he alleges that he was arrested actually

5   based on a citizen's complaint made by Ashley.  *Id*. ¶¶ 4, 33.  These allegations fall short of the

6   standard set by *Pembaur*, which require that Plaintiff allege that Becker made "a deliberate choice

7   to follow a course of action … from among various alternatives," and that Becker was "the official

8   … responsible for establishing final policy with respect to the subject matter in question."

9   *Gillette*, 979 F.2d at 1347 (citing *Pembaur*, 475 U.S. at 483-84)).  Plaintiff alleged only that

10  Becker asked that he be removed from the event because Becker personally disliked him.  Compl.

11  ¶ 32.  Moreover, although Plaintiff alleged that Becker, as the Newark City Manager, "held … the

12  top administrative decision-making, command and/or policy making position for the City," and

13  was responsible for supervising the Chief of Police and reviewing and implementing police

14  policies, Becker's decision to remove Plaintiff from the event because he believed he was

15  trespassing did not concern any of Becker's official responsibilities.  Compl. ¶ 14.  Nowhere does

16  Plaintiff allege that Becker directed officers to arrest him.  At most, Plaintiff implied that Becker

17  directed the officers to detain him to investigate the trespassing charge.

18          Accordingly, the City Defendants' Motion to Dismiss the *Monell* claims against the City is

19  GRANTED WITH LEAVE TO AMEND to the extent that Plaintiff can allege that a policy or

20  custom of the City was the cause of his constitutional injuries.

21  **F.      Whether the Chamber of Commerce Is Liable Under *Monell***

22          The COC Defendants argue that Plaintiff has failed to allege a violation of any

23  constitutional rights by Ashley or the Chamber, because Ashley is not a state actor.  COC Mot. at

24  6.  As such, the COC argues that the Complaint fails to state a claim as to Chamber because it

25  cannot be held vicariously liable under 42 U.S.C. § 1983 for the alleged constitutional violations

26  of its employee, Ashley.  *Id*.  Plaintiff counters that he has sufficiently alleged that Ashley was a

27  state actor based on her joint participation with the City of Newark in the decision to have Plaintiff

28  removed, and that the Chamber's liability flows from Ashley's position as its chief policy maker.

15

1    COC Opp'n at 6.

2          To state a claim pursuant to § 1983, a plaintiff must plead facts indicating that the

3    defendant acted under color of state law at the time the act complained of was committed and that

4    the defendant deprived the plaintiff of the rights, privileges, or immunities secured by the

5    Constitution or laws of the United States.  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.

6    1986).  Generally, private parties are not acting under color of state law, and their conduct does

7    not constitute state action.  *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991); *Martinez v.*

8    *Cnty of Kern*, 2007 WL 1079937, at *3 (E.D. Cal. Apr. 9, 2007) (citing *Harvey v. Harvey*, 949

9    F.2d 1127, 1130 (11th Cir. 1988) ("Only in rare circumstances can a private party be viewed as a

10   'state actor' for section 1983 purposes.").

11         A number of tests are employed to identify state action: "(1) public function; (2) joint

12   action; (3) governmental compulsion or coercion; and (4) governmental nexus."  *Jimenez v. DTRS*

13   *St. Francis, LLC*, 2013 WL 3802482, at *3 (N.D. Cal. July 19, 2013) (citing *Sutton v. Providence*

14   *St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999).  Satisfaction of one of the tests is

15   sufficient to find state action if "no countervailing factor exists."  *Martinez*, 2007 WL 1079937, at

16   *4 (citing *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)).  Plaintiff argues that he has

17   sufficiently alleged that Ashley was a state actor under both the governmental nexus test and the

18   joint participation test.  COC Opp'n at 7-8.

19         1.     The Governmental Nexus Test

20         This test asks whether "there is such a close nexus between the State and the challenged

21   action that the seemingly private behavior may be fairly treated as that of the State itself."  *Kirtley*,

22   326 F.3d at 1095 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S.

23   288, 295 (2001)).  Plaintiff articulates three factors: (1) the level of delegation of authority; (2) the

24   level of state benefit; and (3) whether a "mantle of authority" was conferred.  COC Opp'n at 7

25   (citing *NCAA v. Tarkanian*, 488 U.S. 179, 192-99 (1988)).  Plaintiff argues that all three factors

26   were met because: (1) Becker delegated the responsibility of making the police complaint to

27   Ashley, in place of the City, rendering Ashley a state actor; (2) the City benefitted from Ashley's

28   action by achieving its goal of removing a critic and silencing public criticism; and (3) Becker and

United States District Court
Northern District of California

16

1   Benoun's active presence and participation with defendant Ashley to effect the arrest and removal

2   of Plaintiff, conferred "a mantle of authority" onto Ashley and the Chamber.  *Id.* at 7.

3         Plaintiff's analysis assumes too much.  The Complaint alleges only that Ashley, as

4   president of the Chamber of Commerce, co-hosted an event with the City of Newark, during

5   which City officials identified Plaintiff as a trespasser, and asked that Ashley have him removed.

6   Plaintiff does not allege that the City conferred any governmental authority to Ashley or the

7   Chamber by making this request.  Nor does Plaintiff allege that Ashley had any further

8   involvement in what happened to Plaintiff beyond making the citizen's complaint to police.  The

9   Complaint is devoid of any allegations that ascribe the City's alleged motive to silence Plaintiff to

10  Ashley.

11        2.     The Joint Participation Test

12        Plaintiff also argues that Ashley was a state actor under the "joint participation test."  COC

13  Opp'n at 9.  Under this test, a private party may be liable under § 1983 if he "conspired or entered

14  [into] joint action with a state actor."  *See Franklin v. Fox*, 312 F.3d 423, 441, 445 (9th Cir. 2002);

15  *Brentwood Acad.*, 531 U.S. at 297.  Plaintiff argues that he has sufficiently pled that the State of

16  the City Event was a joint project of the Chamber and the City.  COC Opp'n at 9.  The flyer

17  advertising the event bore both the City's emblem and the Chamber's logo; the Mayor and entire

18  City Council were present, along with senior City administrators and officials; the Chamber is

19  closely affiliated with the City; their websites are linked; and the Chamber is physically located

20  within City Hall.  Compl. ¶¶ 2, 17.  On this basis, Plaintiff argues that he has sufficiently alleged

21  that the Chamber and Ashley were partners or agents of the City.  COC Opp'n at 8.  Plaintiff

22  further argues that he has sufficiently alleged that Benoun, Becker, and Ashley "acted in concert

23  according to the customs, policies, directives, practices, acts and omissions of defendants Newark

24  and Chamber."  *Id.* (citing Compl. ¶ 61).

25        Plaintiff misapplies the joint participation test.  To be sure, Plaintiff alleged that the

26  Chamber of Commerce and the City acted jointly to host an event at which the City government

27  gave an address.  However, Plaintiff failed to allege any joint participation between the Chamber

28  and the City to violate Plaintiff's constitutional rights.  There is no indication that Ashley shared

United States District Court
Northern District of California

17

1    the intent of any City defendant with respect to the complaint she made to police.  Plaintiff alleges

2    only that Ashley was told by City officials that Plaintiff was trespassing at the event, and on this

3    basis alone, Ashley made a citizen's complaint.

4           3.      Policy Maker Liability Under *Pembaur*

5           Last, Plaintiff argues that because Ashley was a state actor, liability attaches to the

6    Chamber because Ashley was its lead policy maker.  COC Opp'n at 8-9 (citing *Pembaur*, 475 U.S.

7    at 481).  This argument fails for two reasons.  First, Plaintiff has failed to establish that Ashley

8    was a state actor.  Second, *Pembaur* is inapposite because Plaintiff has neither identified nor

9    shown any specific policy, custom or practice of the Chamber that injured him or was

10   unconstitutional.  The Complaint alleges that "violations of [P]laintiff's constitutional and lawful

11   rights …were caused by the customs, policies, directives, practices, acts and omissions of the

12   authorized policy makers of defendants … Newark Chamber of Commerce…"  Compl. ¶ 61.  But

13   the only policies alleged were "the use of arrests without probable cause to disrupt and deter

14   demonstrators and First Amendment protected activity; the failure to maintain adequate policies,

15   and to adequately train, supervise and control NPD officers concerning the policing of activities in

16   which members of the public engage in protected First Amendment activity and other expressive

17   activities, and the constitutional and statutory limitations on arrests and imprisonment."  *Id.*

18   Plaintiff has not alleged that Ashley made a decision to enact any of these policies, or that the

19   Chamber itself has any such policy.

20          4.      Summary

21          Here, Plaintiff has failed to allege that Ashley was a state actor under either the

22   governmental nexus test or the joint participation test because he has not established that Ashley

23   did anything more than co-host an event at which the Mayor planned to speak.  Nor can Plaintiff

24   establish liability under *Pembaur* because he failed to allege that Ashley was a state actor, or

25   identify any decision by Ashley that established a policy that caused the constitutional violations

26   of which Plaintiff complains.  Accordingly, the Court GRANTS the COC Defendants' Motion to

27   Dismiss these claims WITH LEAVE TO AMEND to the extent that Plaintiff can allege sufficient

28   facts to establish that Ashley was a state actor consistent with the analysis set forth above.

United States District Court
Northern District of California

18

United States District Court
Northern District of California

1

**G.     Third Claim: Violation of Fourteenth Amendment Due Process Rights**

2          Both the City and COC Defendants move to dismiss Plaintiff's Fourteenth Amendment

3   due process claim on the grounds that Plaintiff's claim is properly brought under the more specific

4   provisions of the Fourth Amendment.  New. Mot. at 12; COC Mot. at 15-16.

5          The Due Process Clause of the Fourteenth Amendment prohibits states from depriving

6   "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV,

7   § 1.  This provision imposes "procedural limitations on a State's power to take away protected

8   entitlements."  *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67 (2009).

9   It provides individuals with the right to both substantive and procedural due process.  However, "if

10  a constitutional claim is covered by a specific constitutional provision, such as the Fourth or

11  Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific

12  provision, not under the rubric of substantive due process [under the Fourteenth Amendment]."

13  *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 853 (9th Cir. 2007) (citing *Graham v.*

14  *Connor*, 490 U.S. 386, 388 (1989); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

15  Accordingly, claims for arrest without probable cause or for excessive force are more

16  appropriately brought under the Fourth Amendment.  *Id.*; *see also Graham*, 490 U.S. at 395;

17  *Podesta v. City of San Leandro*, 2005 WL 2333802, at *4 (N.D. Cal. Sep. 21, 2005) (finding that §

18  1983 claims were properly brought under the Fourth Amendment rather than the Fourteenth

19  Amendment where the gravamen of the complaint is that the plaintiff was subjected to an

20  unreasonable search and seizure or excessive force).

21          Here, the third cause of action alleges a violation of Plaintiff's rights under the Fourteenth

22  Amendment based on Plaintiff's arrest without probable cause and the officers' use of excessive

23  force during that arrest.  Compl. ¶ 48.  These claims fall squarely within the ambit of the Fourth

24  Amendment.  *Graham*, 395; *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998);

25  *Albright,* 510 U.S. at 273 ("where a particular Amendment provides an explicit textual source of

26  constitutional protection against a particular sort of government behavior, that Amendment, not

27  the more generalized notion of substantive due process, must be the guide for analyzing these

28  claims.").  Moreover, to the extent Plaintiff also alleges a First Amendment claim under the

United States District Court
Northern District of California

generalized notion of due process, it is more appropriately analyzed under the First Amendment, as set forth above.[7] *Albright*, 510 U.S. at 272-73.

Accordingly, the COC and City Defendants' Motions are GRANTED WITHOUT LEAVE TO AMEND as to this claim.

**H.      Fourth Claim: Equal Protection**

Plaintiff has voluntarily withdrawn this claim, conceding that, "Plaintiff is not a member of a protected class." New. Opp'n at 2, Chamber Opp'n at 8. Accordingly, this cause of action is DISMISSED WITHOUT LEAVE TO AMEND as to all Defendants.

**I.      Fifth Claim: False Imprisonment**

Plaintiff asserts a claim against all Defendants that he was "imprisoned without probable cause to believe he had committed a crime." Compl. ¶ 52.

1.      The COC Defendants

The COC Defendants contend that Plaintiff fails to state a valid claim for false arrest or imprisonment as to Ashley or the Chamber because the arrest is based solely on Ashley's communication to the police, which is absolutely privileged under section 47(b).[8] COC Mot. at 18. Plaintiff counters that he has properly asserted a claim against Ashley based on the fact that she "triggered" the arrest by making a false police report.[9] COC Opp'n at 4.

California Civil Code section 47(b) bars a civil action for damages for communications made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized

---

[7] Plaintiff's analysis of *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1070 (9th Cir. 2004) is flawed, given that the case analyzed the constitutional bases which would support a malicious prosecution claim under § 1983, not a First Amendment claim and concluded that such claims were not limited to rights secured by the Fourth Amendment. *Awabdy*, 368 F.3d at 1069-70.

[8] The COC additionally argues that all of the state law claims asserted against Ashley and the Chamber are absolutely barred by the litigation privilege. COC Mot. at 17-18. However, as set forth herein, the false imprisonment claim is the only state law cause of action which has not been dismissed with prejudice.

[9] Plaintiff additionally argues that the COC may only raise section 47(b) as an affirmative defense because the claim of privilege raises a factual issue as to whether Ashley's statements to the police were true. COC Opp'n at 5. However, in California, the absolute privilege found in section 47(b) protects statements to the police even if they are false. *See Hagberg*, 32 Cal. 4th at 365.

by law and reviewable pursuant to [statutes governing writs of mandate]."  The privilege bars all tort causes of action arising out of the specified communications except for a claim for malicious prosecution.[10]  *Hagberg v. Cal. Fed. Bank F.S.B.*, 32 Cal. 4th 350, 360 (2004).  The privilege is absolute and unqualified, and cannot be defeated by a showing of malice.  *Id*. at 364-65; *see also Lauter v. Anoufrieva*, 2010 WL 3504745, at * 8 (C.D. Cal. July 14, 2010) ("In the context of communications made to official government agencies prior to the initiation of a proceeding, courts have held that reports made to official government agencies to prompt action by such entities—even false reports made with malice—are absolutely privileged.") (citations omitted).

Although pure communication by a citizen with a police officer is protected by section 47(b), this immunity does not extend to malicious conduct of a citizen that aids or promotes a peace officer's unlawful arrest.  *Steinhart v. Barkela*, 2012 WL 2050374, at *9 (N.D. Cal. June 6, 2012) (citing *Hagberg*, 32 Cal. 4th at 374); *Kesmodel v. Rand*, 119 Cal. App. 4th 1128, 1136-37 (2004).  In *Kesmodel,* the court explained "the [plaintiff] was not arrested and taken into custody based on the officers' independent determination of the merits of the [defendant's] complaint.... It was instead the [defendant's] act of effecting the citizen's arrest, rather than simply their communication, which caused [the] detention, imprisonment and … harm."  *Id*.  "Had the [defendants] only informed the officers of [plaintiff's] alleged criminal activity in order to prompt [his] arrest, and had the officers, after conducting an investigation based on the [defendant's] report, arrested [plaintiff], [defendant's] activity would be protected from liability under section 47(b)."  *Id.* at 1136.

Here, Plaintiff argues that Ashley's liability is premised on her making a false statement to police in order to cause his wrongful arrest.  COC Opp'n at 4.  As such, Plaintiff has alleged an act of pure communication, which is absolutely privileged under section 47(b).  *Brosnan v. Florida*, 2009 WL 763528, at *1 (N.D. Cal. March 23, 2009) (citing *Cabesuela v. Browning-Ferris Indus. of Cal., Inc*., 68 Cal. App. 4th 101, 112 (1998) ("Section 47 gives all persons the right to report

---

[10] The requirements of a malicious prosecution claim include: malice, lack of probable cause, and termination in the plaintiff's favor.  *Hagberg*, at 375.  Here, Plaintiff cannot assert a claim for malicious prosecution because no charges were ever filed against him.

1    crimes to the police, the local prosecutor or an appropriate regulatory agency, even if the report is

2    made in bad faith.").

3           Based on this analysis, this claim is DISMISSED WITH LEAVE TO AMEND to the

4    extent that Plaintiff can allege facts showing unprivileged conduct by Ashley that caused

5    Plaintiff's arrest.

6           2.      The City Defendants

7           Defendant argues that Plaintiff cannot state a claim for false imprisonment against Becker

8    or Benoun because the only allegations are that these two defendants requested that Plaintiff leave

9    an event that they contended was private.  City Mot. at 7.  Plaintiff argues that he has sufficiently

10   alleged that Becker and Benoun were involved in having Plaintiff arrested and incarcerated.  City

11   Opp'n at 4.  The Court disagrees with Plaintiff.

12          "The tort of false imprisonment is the nonconsensual, intentional confinement of a person,

13   without lawful privilege, for an appreciable length of time, however brief."  *Hagberg*, 32 Cal. 4th

14   at 372-73 (alteration in original) (citation and internal quotation marks omitted); *Tekle v. United*

15   *States*, 511 F.3d 839, 851 (9th Cir. 2007).  "[A] false arrest is merely one way in which a false

16   imprisonment may be accomplished—the two are not separate torts."  *Hagberg*, 32 Cal. 4th at 372

17   n. 7 (citation omitted).  "[A] party who 'authorizes, encourages, directs or assists an officer to do

18   an unlawful act, or procures an unlawful arrest, without process, or participates in the unlawful

19   arrest or imprisonment, is liable.'"  *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 754 (E.D. Cal.

20   2008) (citing *Du Lac v. Perma Trans Products, Inc*., 103 Cal. App. 3d 937, 941 (1980)) (overruled

21   on separate issue regarding privilege of a private person to communicate information to the police

22   in *Hagberg*, 32 Cal. 4th at 377).  "'[T]he actor is not liable unless his [or her] act is done for the

23   purpose of imposing confinement upon the other, or with knowledge that such a confinement will,

24   to a substantial certainty, result from it.  It is not enough that the actor realizes or should realize

25   that his [or her] actions involve a risk of causing a confinement, so long as the likelihood that it

26   will do so falls short of a substantial certainty.'"  *Id.*  (citing *Du Lac*, 103 Cal. App. 3d at 943

27   (citations omitted)).

28          Here, Plaintiff argues that "Defendant Becker personally identified Plaintiff as someone

United States District Court
Northern District of California

United States District Court
Northern District of California

1    who attended public events, personally flagged Plaintiff for removal, and was personally involved

2    in getting Plaintiff removed, arrested, and incarcerated."  New. Opp'n at 4.  However, in the

3    Complaint, Plaintiff alleges only that Becker and Benoun told Plaintiff he had to leave, and that

4    thereafter, officers "acting upon the request and consent of … Benoun, [and] Becker" forcibly

5    pulled Plaintiff from his chair, band tied his arms with wristlocks, and removed him from the

6    room.  Compl. ¶¶ 32, 33.  Plaintiff further alleges that Ashley, not Becker or Benoun, swore out a

7    citizen's complaint, which lead to Plaintiff's arrest.  *Id.* ¶ 4.  Accordingly, Plaintiff has not set

8    forth any specific allegations showing that Becker and Benoun were involved in Plaintiff's

9    detention or arrest in any manner, beyond requesting that Plaintiff leave the event.

10        The City Defendants' Motion to Dismiss the false imprisonment claim against Becker and

11   Benoun is GRANTED WITH LEAVE TO AMEND to the extent that Plaintiff can set forth facts

12   establishing that either of these defendants authorized, encouraged, directed or assisted officers in

13   detaining or arresting Plaintiff.

14   **J.       Sixth Claim: Violation of California Civil Code section 51.7 (the "Unruh Act")**

15        The Sixth Cause of Action alleges a violation of the Unruh Act based on threats of

16   violence and intimidation based on Plaintiff's "actual or perceived political affiliation and/or

17   viewpoint."  Compl. ¶ 55.  The City Defendants argue that Plaintiff fails to state a claim for

18   violation of this section because there is no allegation that any of the City Defendants intentionally

19   discriminated against Plaintiff based on any of the enumerated factors.  New. Mot. at 15-16.  The

20   COC Defendants argue that Plaintiff has failed to state a claim for the same reasons.  COC Mot. at

21   19.  Plaintiff tacitly concedes this claim by failing to address these arguments in his Opposition.

22   *See Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *9 & n. 2 (N.D. Cal. Mar. 10,

23   2010) (citing *Jenkins v. Cnty of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)) (dismissing

24   claims as abandoned where the plaintiff did not oppose dismissal); *In re TFT-LCD (Flat Panel)*

25   *Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008) (dismissing a claim without leave to

26   amend where the plaintiff did not address the defendant's arguments).  Accordingly, the Seventh

27   Cause of Action is DISMISSED WITHOUT LEAVE TO AMEND as to all Defendants.

28

**K.       Seventh Claim: Violation of Section 52.1 (the "Bane Act")**

The seventh cause of action alleges that all defendants interfered with Plaintiff's constitutional rights in violation of California Civil Code section 52.1 by threats, intimidation and coercion.  Compl. ¶ 57.  The Complaint identifies three different bases on which Plaintiff asserts a cause of action under section 52.1: (1) the right to freedom of speech based on the First Amendment; (2) the right to be free from illegal arrest based on the Fourth Amendment; and (3) the right not to be deprived of liberty without due process under the Fourteenth Amendment.  *Id.* ¶¶ 11-12.  Plaintiff alleges that each of the City Defendants interfered with these rights by asking him to leave the Showcase event (*Id.* ¶ 32), and then forcibly removing him, detaining him in too tight handcuffs, and wrongfully arresting him for 30 hours (*Id.* ¶¶ 33-35).

1.       The City of Newark Officer Defendants

The City Defendants argue that Plaintiff fails to state a claim for violation of the Bane Act against Lawson and Fredstrom because Plaintiff has not alleged any threats, intimidation or coercion beyond the coercion that was inherent in the alleged underlying arrest.  New. Mot. at 17.  The City Defendants also argue that liability for a Bane Act violation may not be based on speech alone unless the speech itself threatens violence against a specific person, which did not happen here.  New. Mot. at 18.

Plaintiff counters that he has sufficiently alleged a violation of this section against these defendants because he has alleged that the officers used more than the coercion inherent in the arrest itself to deter him from exercising his First Amendment rights, and that their actions were deliberate and spiteful.  New. Opp'n at 6-7.

The Bane Act prohibits interference or attempted interference with a person's rights under federal or California law by "threats, intimidation, or coercion."  Cal. Civ. Code § 52.1(a).  Threat of arrest suffices to demonstrate "threats, intimidation, or coercion" under the Bane Act.  *Cuviello v. City and Cnty of San Francisco*, 940 F. Supp. 2d 1071, 1102 (N.D. Cal. 2013) (quoting *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F. Supp. 2d 1084, 1103-04 (N.D. Cal. 2005).  California courts have also recognized that an arrest without probable cause may constitute a Bane Act violation in and of itself.  *Id.* (citing *Gillan*, 147 Cal. App. 4th at 1050;

*Venegas v. Cnty of Los Angeles*, 32 Cal. 4th 820, 843 (2004)).  In this regard, a wrongful detention that is accompanied by the requisite threats, intimidation, or coercion which is independent from the coercion inherent in the wrongful detention itself, that is deliberate or spiteful, is a violation of the Bane Act."  *Bender v. Cnty of Los Angeles*, 217 Cal. App. 4th 968, 981 (2013) (internal citations and quotations omitted).

In *Bender*, the court found "a showing of coercion separate and apart from the coercion inherent in an unlawful arrest" based on the fact that the arresting officer not only wrongfully detained and arrested plaintiff without probable cause, but then "deliberately and unnecessarily beat and pepper-sprayed the unresisting, already handcuffed plaintiff."  217 Cal. App. 4th at 214.  Here, Plaintiff alleges he was forcibly grabbed, removed from the event, handcuffed in too tight handcuffs for over four hours, interrogated, and arrested by Fredstrom and Lawson, then wrongfully held without bail for a cite and release offense.   Compl. ¶¶ 4, 33-37.  Plaintiff additionally alleges that the arrest was without probable cause and was intended to prevent him from exercising his First Amendment rights at a public event.  Compl. ¶¶ 33-34.  The Court finds that at the pleading stage, these allegations are sufficient to state a claim for violation of the Bane Act against Fredstrom and Lawson.  Accordingly, the City Defendants' Motion to Dismiss the Bane Act claim as to these officers is DENIED.

### 2.      City Defendants Becker and Benoun

Although Plaintiff does not specifically argue that the Bane Act claim extends to Becker and Benoun, Plaintiff argues in his Opposition that "Defendants purposely singled Plaintiff out for retaliation based upon his prior exercise of First Amendment rights at City Council meetings, and then deliberately orchestrated Plaintiff's forcible removal and arrest in front of a ballroom of people."  New. Opp'n at 7.  To the extent that Plaintiff intends to assert a claim against Becker and Benoun, he has not alleged any facts establishing that either defendant used "threats, intimidation, or coercion" against Plaintiff.  *Venegas*, 32 Cal. 4th at 843.  Plaintiff alleges only that Benoun told Plaintiff the event was not public and that he had to leave, and that Becker prompted Ashley to ask Plaintiff to leave.  Compl. ¶ 32.   Although Plaintiff alleges that both Becker and Benoun requested that the officers remove Plaintiff from the ballroom, he does not allege that either

25

defendant threatened Plaintiff with arrest prior to doing so, or that they issued threats of any kind. *See Cuviello*, 940 F. Supp. 2d at 1103 (police threats to arrest protesters if they exercised their First Amendment rights by leaving the free speech area violated the Bane Act).  Accordingly, this cause of action is DISMISSED WITH LEAVE TO AMEND as to Becker and Benoun to the extent that Plaintiff can allege the requisite threats, intimidation, or coercion.

          3.    <u>The Chamber of Commerce</u>

The COC Defendants also argue that Plaintiff has failed to state a cause of action for violation of this section as to Ashley or the Chamber because "mere speech does not provide a basis for a claim under California Civil Code section 52.1."  COC Mot. at 20.  The Court finds that Plaintiff has abandoned this claim by not contesting Defendant's argument in his Opposition.  *See Qureshi*, 2010 WL 841669, at *9 & n. 2; *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1131.  Accordingly, this cause of action is DISMISSED WITHOUT LEAVE TO AMEND as to the COC Defendants.

**L.    Eighth Cause of Action: Negligence**

This claim asserts that "Defendants City of Newark and ACSO have a duty of care to plaintiff and members of plaintiff class to ensure that defendants and their employees and agents did not cause unnecessary or unjustified harm to plaintiff and members of plaintiff class, and have a duty of care to hire, train, supervise and discipline officers and employees so as to not cause harm to plaintiff and members of plaintiff class, and to prevent violations of plaintiff and members of plaintiff class' constitutional, statutory and common law rights."  Compl. ¶ 59.

The COC Defendants argue that this cause of action should be dismissed because Plaintiff fails to allege any facts that would support a cause of action for negligence against Ashley or the Chamber.  COC Mot. at 20.  In his Opposition, Plaintiff argues that the negligence claims against the Chamber and Ashley should survive because the facts as pleaded establish a violation of California Penal Code sections 118 and 148.5.  COC Opp'n at 15.

Generally, criminal statutes do not create private rights of action, and violations of criminal statutes cannot serve as a basis for civil liability.  *Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999) (affirming dismissal of sixteen causes of action predicated on violations of the

1  CPC "[b]ecause these code sections do not create enforceable individual rights"); *Chrysler Corp.*

2  *v. Brown*, 441 U.S. 281, 316 (1979) (a private right of action under a criminal statute is rarely

3  implied without statutory basis for such inference).  The Court has reviewed Penal Code sections

4  118, and 148.5 and finds no indication that civil enforcement of any kind is available to Plaintiff.

5  Nor do these sections set forth any standard of care.  Even if they did, they would not apply to

6  Ashley or the Chamber, as they do not have a duty of care to hire, train, supervise and discipline

7  officers and employees of the City of Newark or the Alameda County Sheriff's Office.

8       Accordingly, this claim is DISMISSED WITHOUT LEAVE TO AMEND as to the COC

9  Defendants.[11]

10  **CONCLUSION**

11       Based on the analysis above, the Court GRANTS IN PART and DENIES IN PART

12  Defendants' Motions to Dismiss as follows:

13       First Cause of Action: The COC Defendants' Motion is GRANTED as to the 42 U.S.C. §

14  1983 claim.  The City Defendants' Motion is GRANTED as to the 42 U.S.C. § 1983 claim.

15  Plaintiff's First Cause of Action is DISMISSED WITH LEAVE TO AMEND as to all Defendants.

16       Second Cause of Action: The COC Defendants' Motion is GRANTED as to the 42 U.S.C.

17  § 1983 claim. The City Defendants' Motion is GRANTED as to the 42 U.S.C. § 1983 claim.

18  Plaintiff's Second Cause of Action is DISMISSED WITH LEAVE TO AMEND as to all

19  Defendants.

20       Third Cause of Action: The COC Defendants' Motion is GRANTED. The City

21  Defendants' Motion is GRANTED.  Plaintiff's Third Cause of Action is DISMISSED WITHOUT

22  LEAVE TO AMEND as to all Defendants.

23       Fourth Cause of Action: The COC Defendants' Motion is GRANTED. The City

24  Defendants' Motion is GRANTED.  Plaintiff's Fourth Cause of Action is DISMISSED WITH

25  LEAVE TO AMEND as to all Defendants.

26       Fifth Cause of Action:  The COC Defendants' Motion is GRANTED. The City

27

28  [11] As noted above, this claim was also dismissed without leave to amend as to the City Defendants.

27

United States District Court
Northern District of California

Defendants' Motion is GRANTED.  Plaintiff's Fifth Cause of Action is DISMISSED WITH LEAVE TO AMEND as to all Defendants.

Sixth Cause of Action: The COC Defendants' Motion is GRANTED. The City Defendants' Motion is GRANTED as to all defendants.  Plaintiff's Sixth Cause of Action is DISMISSED WITHOUT LEAVE TO AMEND as to all Defendants.

Seventh Cause of Action: The COC Defendants' Motion is GRANTED WITHOUT LEAVE TO AMEND.  The City Defendants' Motion is DENIED as to Defendants Lawson and Fredstrom and GRANTED WITH LEAVE TO AMEND as to Defendants Becker and Benoun.

Eighth Cause of Action: Plaintiff's Eighth Cause of Action is DISMISSED WITHOUT LEAVE TO AMEND.

Plaintiff shall file an amended complaint by November 3, 2014.  Plaintiff's amended complaint must comply with the guidelines set forth in Rule 8(a).  This rule requires that a complaint for relief include (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought.  A pleading may not simply allege a wrong has been committed and demand relief; it must state the elements of the claim plainly and succinctly. Plaintiff must allege with at least some degree of particularity the facts in which defendant engaged to support the claim.  *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

**IT IS SO ORDERED.**

Dated: October 6, 2014

_____

MARIA-ELENA JAMES
United States Magistrate Judge