UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PATRICK HENNEBERRY,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF NEWARK, et al.,<br><br>    Defendants. | Case No. 13-cv-05238-MEJ<br><br>**ORDER GRANTING MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION**<br><br>Re: Dkt. No. 51 |

## INTRODUCTION

Plaintiff John Patrick Henneberry ("Plaintiff") brings this civil rights action against multiple Defendants arising from his arrest and subsequent incarceration in 2013. Compl., Dkt. No. 1. Pending before the Court is Defendants County of Alameda (the "County") and Linda Ashley's Motion for Good Faith Settlement Determination Pursuant to California Code of Civil Procedure section 877.6(a)(2). No party has objected to the motion. The Court finds this matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the proposed settlement, relevant legal authority, and the record in this case, the Court **GRANTS** the County and Ashley's motion for the reasons set forth below.

## BACKGROUND

**A.  Factual Background**

On April 18, 2013, Defendant Newark Chamber of Commerce (the "Chamber") and Defendant City of Newark (the "City") held an event called the "2013 State of the City and Showcase" ("Showcase"), featuring Newark Mayor Al Nagy as the keynote speaker. Compl. ¶ 2. All of the members of the Newark City Council were invited and attended the event, along with City administrators and members of the Newark Planning Commission. *Id.* Also present were

1  Defendants City Attorney David Benoun and City Manager John Becker. *Id*.

2      Defendants publicized the event via flyers, newspaper listings, and the Chamber and City
3  websites. *Id*. The webpage stated a luncheon would be served, but there would be free gallery
4  seating for the public beginning at 12:20 p.m. *Id*. ¶ 30. Plaintiff arrived at the event at 12:15 p.m.
5  as the luncheon was concluding, but did not enter. *Id*. ¶¶ 3, 30. He entered the main room at
6  12:25 p.m. and sat in an empty seat in what he surmised was the gallery area. *Id*. ¶ 30.

7      Plaintiff states he is well known to the elected officials and administrators of the City for
8  his frequent attendance and speeches at City Council meetings. *Id*. ¶ 3. Thus, when Becker
9  noticed him sitting in the gallery, Plaintiff alleges Becker prompted Defendant Chamber of
10 Commerce President Linda Ashley to ask him to leave. *Id.* ¶ 32. Plaintiff alleges Benoun and
11 Defendant Newark Police Commander Renny Lawson told him he had no right to be present as
12 this was not a public event, and they demanded Plaintiff leave. *Id*. After Ashley signed a citizen's
13 complaint, Plaintiff alleges Lawson and Defendant Newark Police Officer Karl Fredstrom forcibly
14 pulled him from his chair, band tied his arms with wristlocks, and physically removed him from
15 the room. *Id*. ¶¶ 4, 33. Plaintiff alleges the officers acted "upon the request and consent" of
16 Benoun, Becker, and Ashley. *Id*.

17     Once outside the room, Plaintiff was handcuffed and seated in a chair approximately ten
18 feet from the entrance of the meeting. *Id.* ¶ 34. He was then placed in a patrol car for
19 approximately thirty minutes, before being transported to the Newark Police Station. *Id*. At the
20 station, Fredstrom questioned Plaintiff, at which time Plaintiff asserted his right as a member of
21 the public to be at a public meeting. *Id*. Police later transported Plaintiff to the Fremont police
22 station, where he remained in the back of a police car, still in wristlocks. *Id*. ¶ 35. Plaintiff
23 complained the wristlocks were too tight, but officers denied his requests to have them loosened
24 while he was in the car. *Id*. Plaintiff was then driven to Santa Rita jail. *Id*.

25     Ultimately, Plaintiff was charged with a misdemeanor under California Penal Code section
26 602.1(a)[1] for interfering with the event. *Id*. ¶ 37. Plaintiff was also charged with trespass, a minor

---

[1] California Penal Code section 602.1(a) provides: "Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment

2

1    misdemeanor, based on Ashley's citizen complaint. *Id*. ¶ 36. Plaintiff was ultimately released on
2    a citation, and the District Attorney declined to file charges. *Id.*

### B.     Procedural Background

On November 21, 2013, Plaintiff filed the present Complaint, alleging eight causes of action against the above-named Defendants. *Id.* at 11-13. On October 6, 2014, the Court dismissed certain claims, but allowed the lawsuit to proceed as to the remaining claims. Dkt. No. 25.

All of the parties participated in two settlement conferences with Magistrate Judge Laurel Beeler. Dkt. Nos. 35, 50. With Judge Beeler's assistance, Plaintiff, the County, and Ashley agreed to a settlement, contingent upon the Court making a good faith settlement determination pursuant to California Code of Civil Procedure section 877.6. Mot. at 4. Under the terms of the settlement, Plaintiff agrees to dismiss the action against the County and Ashley, releasing all actual and potential claims against them arising out of the incidents that occurred surrounding Plaintiff's incarceration, for the total sum of $15,000. *Id.* at 1. Pursuant to the settlement agreement, both parties shall be responsible for their own costs and attorneys' fees. *Id.* On August 6, 2015, the County and Ashley filed the present motion.

## LEGAL STANDARD

California Code of Civil Procedure section 877.6 permits a court to approve a settlement if it determines that the settlement was made in good faith. Cal. Civ. Proc. Code § 877.6; *see also Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990) (holding that while the "section 877.6 procedures do not govern a federal action . . . the substantive provisions . . . are applicable"). A finding of good faith settlement between a plaintiff and "one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights," releases the settling defendant "from all liability for any

---

open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine."

contribution to any other parties." Cal. Civ. Proc. Code § 877(b). While the settlement does not discharge any other party from liability, unless its terms so provide, "it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater." *Id.* § 877(a). Section 877.6(a)(1) further provides that a determination of good faith settlement within the meaning of the statute applies only to "any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt." *See Forman v. Gov't Emps. Ins. Co.*, 920 F. Supp. 1065, 1066 (N.D. Cal. 1996).

Section 877.6 reflects "two major goals": "the equitable sharing of costs among the parties at fault and the encouragement of settlements." *Abbott Ford, Inc. v. Superior Ct.*, 43 Cal. 3d 858, 872 (1987). A good faith settlement is one within "the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488, 499 (1985). When making a determination that a settlement was made in good faith under section 877.6(a)(1), "the intent and policies underlying section 877.6 require that a number of factors be taken into account": (1) a rough approximation of the plaintiff's total recovery and the settlor's proportional liability in view of the settlement amount; (2) the allocation of settlement proceeds among plaintiffs; (3) the recognition that a settlor should pay less in settlement than he would if he were found liable after trial; (4) the financial conditions and insurance policy limits of the settling tortfeasor; and (5) the existence of collusion, fraud or tortious conduct intended to injure the interests of the non-settling parties. *Id.*

"Practical considerations" require that the evaluation "be made on the basis of the information available at the time of settlement[,] and a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Id.* (citation omitted). The Court should approve even a contested settlement, unless there is a showing "that the settlement is so far out of the ballpark in relation to these factors to be inconsistent with the equitable objectives of the statute." *Id.* at 499-500. The burden of proving that a settlement between the parties was not made in good faith is on the non-settling tortfeasor. Cal. Civ. Proc. Code § 877.6(d).

## DISCUSSION

As an initial matter, section 877.6's requirement that the action comprise allegations regarding joint tortfeasors is satisfied here, as Plaintiff's Complaint asserts claims against multiple Defendants. Thus, the County and Ashley are "part[ies] to an action in which it is alleged that two or more parties are joint tortfeasors." Cal. Civ. Proc. Code § 877.6(a)(1).

Turning to the terms of the settlement and the application of the *Tech-Bilt* factors, the Court finds those factors favor approval of the settlement agreement.

### A. Approximation of Plaintiff's Recovery and Defendants' Proportionate Liability

First, the County and Ashley must establish the settlement is within the reasonable range permitted by the good faith criterion. Cal. Civ. Proc. Code § 877.6(b); *Tech-Bilt*, 38 Cal. 3d at 500; *see also Toyota Motor Sales U.S.A., Inc. v. Superior Ct.*, 220 Cal. App. 3d 864, 871 (1990), *as modified* (June 5, 1990) ("[i]f . . . there is no substantial evidence to support a critical assumption as to the nature and extent of a settling defendant's liability, then a determination of good faith based upon such assumption is an abuse of discretion."). To determine whether the proposed amount satisfies California's good faith requirement, the defendant's "good faith will not be determined by the proportion his settlement bears to the damages of the claimant. For damages are often speculative, and the probability of legal liability therefore is often uncertain or remote." *Stambaugh v. Superior Ct.*, 62 Cal. App. 3d 231, 239 (1976). Rather, courts are to examine whether the settlement is grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be. *City of Ground Terrace v. Superior Ct.*, 192 Cal. App. 3d 1251, 1262 (1987).

Plaintiff's remaining claim against the County and Ashley is based solely on the length and conditions of his confinement, and they contend the amount of the settlement exceeds what a jury would likely award Plaintiff if it found in his favor regarding the incarceration. Mot. at 6. Plaintiff has raised no objection to the County and Ashley's position. Further, Plaintiff did not sustain any economic losses as the result of his arrest and incarceration, and he is seeking only non-economic damages. *Id.* at 3. Finally, while the information produced so far does not establish a perfect apportionment of liability, none of the remaining Defendants have raised

5

objections to the settlement amount, and "on a motion for a good faith settlement, the Court's job is not to perfectly apportion liability." *ABF Freight Sys., Inc. v. United States*, 2013 WL 842856, at *5 (N.D. Cal. Mar. 6, 2013) ("Here, it cannot be said that there is not enough information to enable the Court to *approximate* liability for the limited purpose of determining whether the proposed settlement satisfies the good faith test." (emphasis in original)); *N. Cty. Contractor's Ass'n Inc. v. Touchstone Ins. Serv.*, 27 Cal. App. 4th 1085, 1090-91 (1994)). Given these facts, the Court finds the proposed settlement roughly approximates the County and Ashley's proportion of potential liability.

### B. Allocation of the Settlement Proceeds

As there is only one Plaintiff in this case, this factor does not weigh against a finding of a good faith settlement.

### C. Settlor Should Pay Less than at Trial

Although the County and Ashley dispute their liability, they, along with Plaintiff, seek to avoid continued expenses and a possible expensive trial. The Court notes this settlement was arrived at after informal discovery and negotiations between the parties, as well as two settlement conferences with Judge Beeler. Accordingly, the Court finds the amount of the settlement reasonable, given the potential outcome at trial and the fact that the County and Ashley allowed to receive a potential discount by settling rather than proceeding to trial. *See ABF Freight Sys.*, 2013 WL 3244804, at *4.

### D. Defendants' Financial Condition and Insurance Policy Limits

As a self-insured public entity, there is no evidence the County and Ashley would be unable to satisfy a judgment. Further, there is no evidence it sought a reduction in its fair share of a settlement based upon any inability to pay, and never claimed any hardship, financial distress, or discount in this regard. All costs and fees to defend this action and the amount of the settlement will be paid from the County's General Fund. Mot. at 4. Given this information, the Court finds no grounds for concluding this factor weighs against the County and Ashley's motion.

### E. Collusion, Fraud, or Tortious Conduct

There is no evidence that any party engaged in collusion, fraud, or tortious conduct in

arriving at this settlement. The facts presented show Plaintiff, the County, and Ashley reached this settlement through arms-length negotiations after informal discovery and two settlement conferences with Judge Beeler. The settlement is in writing, provides for payment of $15,000 in exchange for release of all claims, contains no other consideration, and there are no undisclosed terms. Mot., Ex. A ("Release of All Claims"). The remaining Defendants make no allegations to the contrary. Accordingly, this factor weighs in favor of approving the proposed settlement.

## CONCLUSION

Based on the analysis above, the Court finds that application of the *Tech-Bilt* factors demonstrates the proposed settlement is a good faith settlement under California law. Accordingly, the Court **GRANTS** the County and Ashley's Motion for Good Faith Settlement Determination, and bars any present or potential joint tortfeasor from bringing any future claims against the County and/or Ashley for equitable contribution or partial or comparative indemnity based on comparative negligence or comparative fault. The parties shall file a stipulation for dismissal.

**IT IS SO ORDERED.**

Dated: September 3, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge