1
2
3                           UNITED STATES DISTRICT COURT
4                         NORTHERN DISTRICT OF CALIFORNIA
5

6    JOHN PATRICK HENNEBERRY,                    Case No. 13-cv-05238-MEJ

7                 Plaintiff,                     **ORDER RE: MOTION TO DISMISS**
8          v.                                    Re: Dkt. No. 67
     CITY OF NEWARK, et al.,
9
                  Defendants.
10

11

12                                 **INTRODUCTION**

13         Plaintiff John Patrick Henneberry ("Plaintiff") brings this case for violations of his civil

14   rights pursuant to 42 U.S.C. § 1983, as well as on behalf of a potential class of misdemeanor

15   arrestees in the City of Newark who were allegedly excessively detained instead of cited and

16   released.  Pending before the Court is the City of Newark, John Becker, Karl Fredstrom, and

17   Renny Lawson's (collectively, "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil

18   Procedure ("Rule") 12(b)(6).  Dkt. No. 67.  Plaintiff filed an Opposition (Dkt. No. 68), and

19   Defendants filed a Reply (Dkt. No. 69).  The Court held a hearing on this matter on February 4,

20   2016.  Dkt. No. 74.  Having considered the parties' positions, relevant legal authority, and the

21   record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion

22   for the following reasons.

23                                 **BACKGROUND**

24   **A.    Procedural Background**

25         On November 12, 2013, Plaintiff filed a Complaint against the City of Newark, the County

26   of Alameda, the Newark Chamber of Commerce, Linda Ashley, John Becker, David Benoun, Karl

27   Fredstrom, and Renny Lawson.  Compl., Dkt. No. 1.  On December 19, 2013, all Defendants filed

28   Motions to Dismiss.  Mots., Dkt. Nos. 8, 12.  On October 6, 2014, the Court issued an Order

United States District Court
Northern District of California

United States District Court
Northern District of California

1    granting in part and denying in part their Motions.  Mot. to Dismiss Order, Dkt. No. 25.

2        Following a series of settlement conferences with Magistrate Judge Laurel Beeler, the

3    parties submitted stipulations to dismiss Defendants County of Alameda, the Newark Chamber of

4    Commerce, Linda Ashley, and David Benoun.  Dkt. Nos. 62, 64.  The Court granted these

5    stipulations on October 19 and 22, 2015.  Dkt. Nos. 63, 65.

6        On October 30, 2015, Plaintiff filed a First Amended Complaint against the City of

7    Newark, John Becker, Karl Fredstrom, and Renny Lawson.  First Am. Compl. ("FAC"), Dkt. No.

8    66.

9    **B.    Factual Background[1]**

10       On April 18, 2013, the Newark Chamber of Commerce and the City of Newark (the

11   "City") held a public luncheon and event titled "2013 State of the City Address & Showcase" at

12   the Hilton Hotel in Newark.  *Id.* ¶ 29.  Newark Mayor Al Nagy was to be the keynote speaker,

13   with members of the Newark City Council and Newark staff members, including City Attorney

14   Benoun and City Manager Becker, also in attendance.  *Id.*  The event was widely publicized to the

15   general public in the local newspaper and on websites, and the general public was encouraged to

16   attend.  *Id.* ¶ 30.  There was a charge for those dining at the luncheon.  *Id.*  For those members of

17   the public who chose not to partake in the meal, there was free Gallery attendance available.  *Id.*

18       Plaintiff sought to attend this event, arriving five minutes before the Gallery seating was

19   scheduled to become available.  *Id.* ¶ 31.  After waiting for ten minutes, Plaintiff entered the main

20   room, where the luncheon appeared to concluding.  *Id.*  Plaintiff saw approximately 20-25 seats

21   organized in rows off to the side of the main entrance and surmised these seats constituted the

22   Gallery seating.  *Id.*  He sat down in an empty seat there.  *Id.*

23       The elected officials and administrators of the City knew Plaintiff, as he is a critic of City

24   policies and practices, and frequently attended and spoke during City Council public comment

25   sessions criticizing the actions and policies of the City and its elected officials and administrators,

26   including Mayor Nagy and City Manager Becker.  *Id.* ¶ 2.  After Plaintiff took a seat in the

27

28
---
[1] The factual background is taken from allegations in Plaintiff's FAC.

United States District Court
Northern District of California

1    luncheon room, Becker noticed Plaintiff, who was sitting quietly, waiting for the speech to start.

2    *Id.* ¶ 32.  Becker instructed Defendant Lawson, the Newark Police Commander, to inform Plaintiff

3    he had no right to be present, to demand he immediately leave, and that if he did not leave, to take

4    the necessary steps to remove him.  *Id.* ¶ 33.  Defendant Fredstrom, a Newark Police Department

5    police officer, was summoned as backup.  *Id.* ¶¶ 15, 33.

6          When Plaintiff asserted his right as a member of the general public to attend and hear the

7    Mayor's speech, Defendants Lawson and Fredstrom forcibly pulled Plaintiff out of his chair, tied

8    his arms with wrist locks, and physically removed from the room.  *Id.* ¶ 34.  Plaintiff alleges he

9    was publicly humiliated in front of all the luncheon attendees.  *Id.*

10         Once outside the room, Plaintiff was handcuffed and seated in a chair approximately ten

11   feet from the entrance of the meeting.  *Id.* ¶ 35.  He sat in plain view of the attendees and everyone

12   entering and exiting the luncheon.  *Id.*  Plaintiff alleges this public humiliation and display was

13   part of the City's policy, as implemented by Defendant Becker, to stifle and suppress negative

14   speech and criticism of the City and to punish Plaintiff for his prior criticisms of the City.  *Id.*

15   Furthermore, Plaintiff alleges that when Defendant Lawson, as a senior ranking officer of the

16   Newark Police Department, instructed Defendant Fredstrom to detain and arrest Plaintiff, this was

17   also part of the City's policy and practice to punish individuals for criticizing the City and to deter

18   future free speech.  *Id.* ¶ 36.

19         After being detained for 30 minutes in the chair, Defendant Fredstrom moved Plaintiff to a

20   patrol car for another 30 minutes before taking him to the Newark Police Station, where he held

21   Plaintiff for over two hours.  *Id.* ¶ 37.  According to Plaintiff, at no time during his arrest and

22   detention did Defendant Fredstrom take any action to comply with California Penal Code section

23   853.6 and cite and release Plaintiff.  *Id.*  Defendant Fredstrom also interrogated Plaintiff, and after

24   the interrogation, Fredstrom told Plaintiff he would be transported to the Fremont Jail, where

25   Plaintiff would be cited and released.  *Id.* ¶¶ 37-38.  Fredstrom then transported Plaintiff to the

26   Fremont Police Station, and then to Santa Rita Jail in Dublin.  *Id.* ¶¶ 38-39.  During this time,

27   Plaintiff remained in the Newark police vehicle with handcuffs that were too tight.  *Id*. (both).

28   Although Plaintiff requested several times for the handcuffs to be loosened, those requests were

United States District Court
Northern District of California

1    denied. *Id.* ¶ 38.  The conditions at Santa Rita were extremely over-crowded, dirty, cold, and

2    exposed Plaintiff to jail staff when he was using the toilet. *Id.* ¶ 41.

3          Plaintiff was charged with trespass in violation of California Penal Code section 602.1(A),

4    and Sheriffs Deputies told Plaintiff he was required to post $5,000 bail. *Id.* ¶ 42.  Plaintiff refused

5    to post bail, and he was placed in a holding tank. *Id.*  After 32 hours of incarceration, Plaintiff was

6    released on citation. *Id.* ¶ 43.  Plaintiff alleges this citation "could and should have been given to

7    him immediately after arrest" by the Newark Police Department. *Id.*  The Alameda County

8    District Attorney declined to file charges against Plaintiff. *Id.* ¶ 44.

9          Plaintiff alleges there is a class of individuals who have been arrested for misdemeanors in

10    the City of Newark, who were eligible for cite and release, but denied this process and

11    incarcerated instead. *Id.* ¶ 25.  He believes that in the one year period prior to the filing of this

12    claim, there were over 300 such individuals. *Id.*  Plaintiff purports to bring this case as a class

13    action and represent those individuals. *Id.* ¶¶ 24-28 (defining the proposed class as "persons

14    arrested in the City of Newark, for misdemeanors, who instead of being cited and released, were

15    instead detained, arrested, and imprisoned for unreasonable and lengthy periods of time.").

16          Plaintiff now asserts five claims for relief, apparently asserting all claims against all

17    Defendants[2]: (1) a claim under the First Amendment of the United States Constitution for

18    violating Plaintiff's rights to freedom of speech and association; (2) a claim under the Fourth

19    Amendment of the United States Constitution for violating Plaintiff and putative class members'

20    rights to be free from unreasonable seizures and excessive/arbitrary arrest or imprisonment; (3) a

21    claim under the Fourteenth Amendment of the United States Constitution for violating Plaintiff

22    and putative class members' rights to equal protection; (4) a claim for false arrest and false

23    imprisonment for intentionally imprisoning Plaintiff and putative class members in violation of

24    California Penal Code section 853.6; and (5) a claim under California Civil Code section 52.1 for

25    violating Plaintiff's and putative class members' peaceable exercise and enjoyment of rights

26    secured by the Constitution and laws of the United States and the State of California.

27

28    [2] The FAC does not state which claims apply to which Defendants, leading the Court (and
Defendants) to the conclusion that Plaintiff brings all his claims against all Defendants.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEGAL STANDARD**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

1   *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

2   *Davis*, 371 U.S. 178, 182 (1962)).

3                                                **DISCUSSION**

4          Defendants' Motion challenges Plaintiff's FAC on the grounds that it fails to state a claim

5   for (1) violations of equal protection rights under the Fourteenth Amendment; (2) false arrest or

6   false imprisonment against Becker; (3) a violation of Civil Code section 52.1; and (4) municipal

7   liability against the City under 42 U.S.C. § 1983.

8   **A.     Fourteenth Amendment Equal Protection Claim**

9          Defendants assert Plaintiff fails to state a claim for an equal protection violation under the

10   Fourteenth Amendment because (1) the Court already specifically dismissed Plaintiff's equal

11   protection claim, without leave to amend, and (2) Plaintiff has failed to allege plausible facts that

12   he or any potential class member is part of a protected class.  Mot. at 6-8.

13          In the Order on Defendants' First Motions to Dismiss, the Court noted, "Plaintiff has

14   voluntarily withdrawn [his equal protection claim], conceding that, 'Plaintiff is not a member of a

15   protected class.'"  Order re: Mot. to Dismiss at 20 (quoting Plaintiff's opposition papers).  On that

16   same page, the Court wrote: "[a]ccordingly, this cause of action is DISMISSED WITHOUT

17   LEAVE TO AMEND as to all Defendants." *Id.*  However, in the conclusion of the Order, the

18   Court made an inconsistent statement, writing: "Plaintiff's Fourth Cause of Action is DISMISSED

19   WITH LEAVE TO AMEND as to all Defendants." *Id.* at 27.  The Fourth Cause of Action

20   represented the same equal protection claim the Court had earlier dismissed without leave to

21   amend.  This inconsistency has caused regrettable but understandable confusion among the parties.

22          Regardless of the Court's earlier intent in dismissing Plaintiff's equal protection claim, the

23   original issue Plaintiff earlier identified in opposing Defendants' First Motions to Dismiss remains

24   today, i.e., he has not alleged facts that he or the potential class members are part of a protected

25   class.  "The Equal Protection Clause requires the State to treat all similarly situated people

26   equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted).  "To state a

27   claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth

28   Amendment a plaintiff must show that the defendants acted with an intent or purpose to

United States District Court
Northern District of California

1    discriminate against the plaintiff based upon membership in a protected class." *Barren v.*

2    *Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citations omitted). "'The first step in equal

3    protection analysis is to identify the [defendants' asserted] classification of groups.'" *Thornton v.*

4    *City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting *Freeman v. City of Santa Ana*, 68

5    F.3d 1180, 1187 (9th Cir. 1995)). "The groups must be comprised of similarly situated persons so

6    that the factor motivating the alleged discrimination can be identified." *Id.* (citation omitted).

7    Plaintiff's FAC does not allege what "protected class" he or the potential class members are

8    members of, or how Defendants acted with a discriminatory intent or purpose based on their

9    membership in that protected class. Without these allegations or facts making discrimination

10   based on a protected class plausible, Plaintiff cannot maintain his equal protection claim.

11          Plaintiff has had the opportunity through past briefing to uncover the flaws in his equal

12   protection claim, and indeed he recognized the need to allege he is part of a protected class in the

13   original round of briefing on Defendants' First Motions to Dismiss. At this point, there are no

14   allegations in the FAC indicating Plaintiff or putative class members are part of a protected class

15   for equal protection purposes. Accordingly, the Court GRANTS Defendants' Motion to Dismiss

16   Plaintiff's equal protection claim WITHOUT LEAVE TO AMEND.

17   **B.      False Arrest/Imprisonment Claim Against Becker**

18          Defendants challenge Plaintiff's claim for false arrest and false imprisonment on the

19   ground that it is imprecisely and broadly alleged against all Defendants, but his allegations do not

20   show the requisite involvement by Defendant Becker. Mot. at 8. In tying their argument to the

21   Court's Order on Defendants' First Motions to Dismiss, Defendants note the Court previously

22   found inadequate Plaintiff's allegation that Becker told Plaintiff to leave and, that "acting on the

23   request and consent" of Becker, the Defendant officers then detained and removed Plaintiff from

24   the room. *Id.* That Order permitted Plaintiff leave to amend his false imprisonment/arrest claim

25   against Becker "to the extent that Plaintiff can set forth facts establishing that . . . [he] authorized,

26   encouraged, directed or assisted officers in detaining or arresting Plaintiff." Order re: Mots. to

27   Dismiss at 23. Defendants now contend Plaintiff's FAC fails to set forth such facts or other facts

28   that may establish a false imprisonment claim against Becker. Mot. at 8.

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    "The tort of false imprisonment is the nonconsensual, intentional confinement of a person,

2    without lawful privilege, for an appreciable length of time . . . ." *Hagberg v. Cal. Fed. Bank FSB*,

3    32 Cal. 4th 350, 372-73 (2004) (alteration in original; quotation and internal marks omitted); *Tekle*

4    *v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (recognizing that under California law, "[t]he

5    elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional

6    confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time,

7    however brief." (quotation omitted)).   "[A] false arrest is merely one way in which a false

8    imprisonment may be accomplished—the two are not separate torts." *Hagberg*, 32 Cal. 4th at 372

9    n.7 (citation omitted).

10        Additionally, "a party who 'authorizes, encourages, directs or assists an officer to do an

11    unlawful act, or procures an unlawful arrest, without process, or participates in the unlawful arrest

12    or imprisonment, is liable.'" *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 754 (E.D. Cal. 2008)

13    (quoting *Du Lac v. Perma Trans Prods., Inc.*, 103 Cal. App. 3d 937, 941 (1980)) (overruled on

14    separate issue regarding privilege of a private person to communicate information to the police in

15    *Hagberg*, 32 Cal. 4th at 377).   "'[T]he actor is not liable unless his [or her] act is done for the

16    purpose of imposing confinement upon the other, or with knowledge that such a confinement will,

17    to a substantial certainty, result from it.   It is not enough that the actor realizes or should realize

18    that his [or her] actions involve a risk of causing a confinement, so long as the likelihood that it

19    will do so falls short of a substantial certainty.'" *Id.* (citing *Du Lac*, 103 Cal. App. 3d at 943

20    (citations omitted)).

21        Plaintiff's FAC does not set forth meaningfully different allegations from his original

22    complaint about Defendant Becker's involvement in Plaintiff's alleged false arrest and

23    imprisonment.   Plaintiff argues the extent of Becker's involvement is a factual issue of causation

24    that should be resolved by a jury (Opp'n at 9-10), but his argument overlooks the pleading

25    standards required to advance a claim past the motion to dismiss stage.   Specifically, Plaintiff has

26    still not alleged plausible facts showing that Becker authorized, encouraged, directed, or assisted

27    the Officers in their allegedly illegal acts.   Plaintiff alleges only that "Defendant Becker instructed

28    the Chamber of Commerce and the Newark Police Commander, Defendant Lawson, to inform

8

1    plaintiff that he had no right to be present, to demand that Plaintiff immediately leave, and that if

2    Plaintiff did not leave, to take the necessary steps to remove Plaintiff." FAC ¶ 33. The FAC

3    contains no facts indicating that Becker's act in instructing Lawson to remove Plaintiff if

4    necessary was done for the purpose of confining Plaintiff or with knowledge that confinement was

5    likely to result. There are no facts that Becker even knew the officers forcibly removed and

6    handcuffed Plaintiff. Taken at its word, the FAC only indicates Becker intended Plaintiff leave

7    the luncheon but provides nothing about arresting, detaining, or confining him without process.

8    Failure to allege such facts prohibits Plaintiff from maintaining this claim.

9            As the Court previously provided Plaintiff an opportunity to cure his allegations against

10   Becker with regard to the false imprisonment/arrest claim, and he has again failed to allege

11   plausible facts to maintain this claim, the Court DISMISSES this claim against Becker WITHOUT

12   LEAVE TO AMEND.

13   **C.        Section 52.1, Bane Act Claim Against Becker**

14           Defendants also challenge Plaintiff's claim for a violation of the Bane Act, California Civil

15   Code section 52.1, against Defendant Becker. Mot. at 9-10. The Bane Act provides a private right

16   of action against a person or persons who interfere by "threats, intimidation, or coercion, or

17   attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any

18   individual or individuals of rights secured by the Constitution or laws of the United States, or of

19   the rights secured by the Constitution or laws of this state . . ." Cal. Civ. Code § 52.1. As

20   Defendants point out, the Court previously dismissed Plaintiff's Bane Act claim against Becker

21   because Plaintiff had not shown that Becker threatened or coerced Plaintiff, but the Court

22   nonetheless permitted Plaintiff leave to amend "to the extent that [he could] allege the requisite

23   threats, intimidation, or coercion." Order re: Mots. to Dismiss at 26. Defendants assert Plaintiff's

24   FAC still fails to allege such facts, and as such, his Bane Act claim against Becker should be

25   dismissed.

26           "There are two distinct elements for a section 52.1 cause of action. A plaintiff must show

27   (1) intentional interference or attempted interference with a state or federal constitutional or legal

28   right, and (2) the interference or attempted interference was by threats, intimidation or coercion."

United States District Court
Northern District of California

9

1    *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), *as modified on denial of reh'g* (Mar.

2    6, 2015), *review denied* (May 20, 2015) (citations omitted).  In responding to Defendants'

3    argument that Plaintiff has not alleged how Defendant Becker—as opposed to other Defendants—

4    threatened, intimidated, or coerced Plaintiff to interfere with his rights, in his Opposition, Plaintiff

5    asserts, "the coercion was the public humiliation and dragging of plaintiff out of the room in front

6    of everyone, his arrest, the long interrogation conducted at Newark Police Station, defendants'

7    refusal to cite and release, and then excessive incarceration for 32 hour[s]."  Opp'n at 9.  The

8    problem with this argument is again that it does not describe what actions *Becker* took to interfere

9    with Plaintiff's rights in a way that would be violative of the Bane Act as opposed to actions by

10   any other Defendants.  As Defendants assert, "not one of the allegations pertains to actions of

11   Becker."  Reply at 5.

12        Having carefully reviewed the FAC, the only allegation that comes close to showing that

13   Defendant Becker interfered or attempted to interfere with Plaintiffs' rights through threats or

14   coercion is that "Becker instructed . . . Lawson, to inform plaintiff that he had no right to be

15   present, to demand that Plaintiff immediately leave, and that if Plaintiff did not leave, to take the

16   necessary steps to remove Plaintiff."  FAC ¶ 33.  But this does not show Becker used threats or

17   coercion to interfere with Plaintiff's rights for two reasons.  First, "[s]peech alone is not sufficient

18   to support" a Bane Act claim "except upon a showing that the speech itself threatens violence

19   against a specific person or group of persons; and the person or group of persons against whom the

20   threat is directed reasonably fears that, because of the speech, violence will be committed against

21   them or their property and that the person threatening violence had the apparent ability to carry out

22   the threat."  Cal. Civ. Code § 52.1(j).  Indeed, there is nothing in the FAC to indicate Becker's

23   speech threatened violence or that Plaintiff reasonably feared violence from Becker's statements.

24   Second, there are no facts that Becker and Plaintiff even spoke; rather, Becker instructed Lawson

25   to speak with Plaintiff.  Without more, Plaintiff may not maintain his Bane Act claim against

26   Becker.

27        In light of the foregoing analysis, and as Plaintiff has previously been given leave to

28   amend to cure this claim, the Court accordingly DISMISSES Plaintiff's Bane Act claim against

United States District Court
Northern District of California

10

1   Becker WITHOUT LEAVE TO AMEND.

2   **D.      *Monell* Claims**

3   Finally, Defendants seek dismissal of Plaintiff's *Monell* claims, noting that Plaintiff "again

4   named all defendants in his first through third claims for relief" in which he "appears to attempt a

5   *Monell* theory of liability" against the City.  Mot. at 10 (citing FAC ¶¶ 43-48).  Plaintiff's first

6   three claims are for (1) a violation of his First Amendment rights; (2) a violation of his Fourth

7   Amendment rights; and (3) a violation of his Fourteenth Amendment equal protection rights,

8   which the Court has dismissed above.[3]  Therefore, the issue is whether Plaintiff may maintain his

9   First and Fourth Amendment municipal liability claims against the City.  Defendants argue that,

10  like his first Complaint, Plaintiff has again failed to allege his rights were violated as a result of a

11  City policy or custom.  Mot. at 10-11.  To the extent he bases his *Monell* claims on Becker's

12  actions as a policymaker, Defendants urge the Court to reject that interpretation.  *Id.* at 11-12.

13  A local government entity "may not be sued under § 1983 for an injury inflicted solely by

14  its employees or agents."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

15  When an individual sues a municipality for violation of a constitutional right, the municipality is

16  liable only if the individual can establish that the municipality "had a deliberate policy, custom, or

17  practice that was the 'moving force' behind the constitutional violation he [or she] suffered."  *Id.*

18  at 694-95; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *Galen v. Cty. of Los Angeles*,

19  477 F.3d 652, 667 (9th Cir. 2007).  In order to hold a public entity liable, a plaintiff must

20  demonstrate that the unlawful governmental action was part of the public entity's policy or

21  custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury.

22  *Monell*, 436 U.S. at 690-92, 694-95.

23  A single act of a policymaker in some instances can be sufficient for a *Monell* claim when

24  "the decisionmaker possesses final authority to establish municipal policy with respect to the

25  action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986).

26  Municipal liability attaches only where the decisionmaker possesses

27

28  [3] "Because there is no constitutional violation, there can be no municipal liability."  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008).

*United States District Court*
*Northern District of California*

11

1

2

3

4

5

6

> final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. [citation] The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.

7    *Id.* at 481-83 (citations and footnotes omitted). Municipal liability will attach "only where 'a

8    deliberate choice to follow a course of action is made from among various alternatives by the

9    official or officials responsible for establishing final policy with respect to the subject matter in

10   question.'" *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (quoting *Pembaur*, 475 U.S.

11   at 483-84).

12   According to Plaintiff, "Becker is precisely the type of municipal official whose edicts or

13   acts may fairly be said to represent official policy.'" Opp'n at 5-6 (quoting *Monell*, 436 U.S. at

14   694). Plaintiff contends "Defendant Becker was the highest ranking administrator, had complete

15   authority over the Newark Police Department, and control over all departments and all

16   employees[,]" noting that the Newark Municipal Code 2.04.070, "Powers and Duties. [City

17   Manager]" gave Becker authority "[t]o control, order and give directions to all heads of

18   departments and to subordinate officers and employees of the city under his jurisdiction, except

19   the city attorney, through their department heads" and "[t]o exercise control over and supervise in

20   general all departments and divisions of the city government and all appointive officers and

21   employees thereof, including the city clerk and the city treasurer, but not including the city

22   attorney[.]" *Id.* at 6-7.

23   Defendants do not challenge the allegation that Becker had final policymaking authority,

24   but note "*Pembaur* requires more than just the involvement of a final policy decision-maker."

25   Reply at 6. They assert there are no allegations showing Becker "made a deliberate choice to

26   follow a course of action . . . from among various alternatives." *Id.* (citations omitted). But

27   Plaintiff alleges "Defendant Becker had the option to permit Plaintiff to remain [at the event]

28   given that Plaintiff was quiet and not disruptive and only having Plaintiff removed if he disrupted

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the proceedings." FAC ¶ 33.  He asserts that "[i]nstead, Defendant Becker as the final authority to

2    establish municipal policy made the decision that plaintiff should be punished for his prior free

3    speech and this punishment would consist of denying Plaintiff the same opportunity and right,

4    provided to the general public, to attend and hear the speech." *Id.*

5            Plaintiff thus plausibly alleges that Becker made a deliberate choice to deny Plaintiff the

6    opportunity to attend and take part in this civic event based on the fact that Plaintiff had been

7    critical of the City in the past, rather than allowing Plaintiff to remain at the event and risk him in

8    some way displaying his criticisms.  *See Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)

9    (holding that a government official violates a citizen's First Amendment rights if he deterred or

10   chilled the citizen's political speech and such deterrence was a substantial or motivating factor in

11   his conduct); *see also Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 873 (9th Cir. 2002)

12   ("It is well-settled that the First Amendment guarantees the public . . . a qualified right of access to

13   governmental proceedings.").  As such, Plaintiff has alleged plausible facts showing Becker was

14   "a final policymaker . . . such that a final decision by that person may appropriately be attributed

15   to the [municipality]." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004).  Accordingly, the Court

16   will not dismiss the Plaintiff's First Amendment claims against the City.

17           Plaintiff's Fourth Amendment claim is less clear.  At present, Plaintiff's Fourth

18   Amendment claim is based on Defendants' use of "unreasonable seizures and excessive and/or

19   arbitrary force and/or arrest and/or imprisonment without reasonable or probable cause under the

20   Fourth Amendment to the United States Constitution." FAC ¶ 46.  He appears to allege *Monell*

21   liability related to this claim, contending later in the FAC that the violations of the rights

22   complained of were caused by "customs, policies, directives, practices, acts and omissions of

23   authorized policy makers . . . [who] encouraged, authorized, directed, condoned, and ratified the

24   unconstitutional and unlawful conduct[,]" and that "[s]aid customs, policies and practices include .

25   . . the failure to maintain adequate policies, and to adequately train, supervise and control

26   [Newark] officers concerning . . . the constitutional and statutory limitations on arrests and

27   imprisonment." *Id.* ¶ 54.  Despite the apparent presence of a Fourth Amendment *Monell* claim,

28   the parties' briefing on the issue of whether the City should be dismissed from this action focuses

1    almost entirely on Defendant Becker's policymaking authority related to Plaintiff's First

2    Amendment claims.  Nonetheless, the City generally contends Plaintiff has not alleged facts to

3    establish municipal liability, thus the Court will consider whether Plaintiff's Fourth Amendment

4    *Monell* claims are supported with plausible facts.

5           To the extent Plaintiff alleges he was unreasonably arrested and detained under the Fourth

6    Amendment, as discussed above with regard to his false arrest/imprisonment claim, he has not at

7    this time alleged *plausible* facts that Becker, as a final policymaker, knew or intended for Plaintiff

8    to be held or detained.  Accordingly, the Court does not find that Becker acted as a final

9    policymaker or made a final, deliberate decision from among various alternatives to detain and

10   hold Plaintiff.  But regardless of Defendant Becker's involvement, neither side truly addressed

11   whether *Monell* liability attaches to the City for Plaintiff's Fourth Amendment cite and release

12   claim, which Plaintiff appears to bring on behalf of himself and the "proposed class consist[ing] of

13   persons arrested in the City of Newark, for misdemeanors, who instead of being cited and

14   released, were instead detained, arrested, and imprisoned for unreasonable and lengthy periods of

15   time."  FAC ¶ 25.  Further, "plaintiff alleges that the class of individuals who have been arrested

16   for misdemeanors in the City of Newark, who were eligible for cite and release, but denied cite

17   and release and incarcerated, in a one year period prior to the filing of this claim, to be in excess of

18   three hundred (300)."  *Id.* ¶ 45.  Defendants did not expressly challenge Plaintiff's Fourth

19   Amendment claim relating to the excessive detainment/cite and release allegations, and Plaintiff

20   alleges at least some facts suggesting a persistent and widespread custom.  *See Hunter v. Cty. of*

21   *Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011); *see also Sloman*, 21 F.3d at 1470 ("Customary

22   practices, if widespread among police employees, are a sufficient basis for municipal liability.").

23   Given these circumstances, the Court shall not dismiss this claim at this time.

24          In light of the foregoing, the Court DENIES WITHOUT PREJUDICE Defendants' Motion

25   to Dismiss Plaintiff's municipal liability claims for violations of his First and Fourth Amendment

26   rights (first and second claims for relief).

27   //

28   //

United States District Court
Northern District of California

14

United States District Court
Northern District of California

**CONCLUSION**

Based on the analysis above, the Court **GRANTS IN PART** and **DENIES IN PART**

Defendants' Motion as follows:

(1) The Court GRANTS Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment equal protection claim, including his related municipal liability claim, WITHOUT LEAVE TO AMEND.

(2) The Court GRANTS Defendants' Motion to Dismiss Plaintiff's false imprisonment/arrest claim (fourth claim for relief) against Defendant Becker WITHOUT LEAVE TO AMEND.

(3) The Court GRANTS Defendants' Motion with respect to Plaintiff's Bane Act claim (fifth claim for relief) against Defendant Becker WITHOUT LEAVE TO AMEND.

(4) The Court DENIES WITHOUT PREJUDICE Defendants' Motion to Dismiss Plaintiff's § 1983 municipal liability claims under the First and Fourth Amendments (first and second claims for relief).

**IT IS SO ORDERED.**

Dated: February 8, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge